**U.S. Department of Justice**

*Eastern District of Louisiana*
*U. S. Attorney's Office*

---

| | | |
|---|---|---|
| *Emily K. Greenfield* | *Poydras Center* | *Telephone: (504) 680-3024* |
| *Assistant United States Attorney* | *650 Poydras Street, 16th Floor* | *Fax: (504) 589-2027* |
| | *New Orleans, LA  70130* | |

November 13, 2012

George M. Chalos, Esq.
Chalos and Co., P.C.
55 Hamilton Ave.
Oyster Bay, NY 11771

Re: United States v. Tyana Navigation, Limited
 Criminal No.  12-290 "E"

Dear Mr. Chalos:

In compliance with the holding of Bryan v. United States, 492 F.2d 775 (1974) and with Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure, the Government wishes to acknowledge the following agreement which was reached between the Government and Tyana Navigation, Limited (hereinafter the "Company" or "defendant"), the defendant in the above-captioned proceeding. As defendant's counsel, you have reviewed the terms of this agreement and have been advised by the Company that the Company fully understands the terms of this agreement. The Company by resolution attached hereto has authorized you to enter into this plea agreement, on the Company's behalf. Additionally, the Company agrees to waive its right to grand jury indictment.

The Government intends to file a one-count felony Bill of Information charging the Company, by and through its agents and employees who were acting within the scope of their agency and employment and for the intended benefit of the Company, with one violation of Title 33, United States Code, Section 1908(a) for knowingly failing to maintain an oil record book while in port and within the internal waters of the United States. The Company understands that the maximum penalty it may face for each count is a fine of up to $500,000, or the greater of twice the gross gain to the defendant or twice the gross loss to any person under Title 18, United States Code, Section 3571.

It is also understood that the restitution provisions of Sections 3663 and 3663A of Title 18, United States Code will apply and the Company agrees that any restitution imposed will be non-dischargeable in any bankruptcy proceeding and that defendant will not seek or cause to be sought a discharge or a finding of dischargeability as to the restitution obligation. The parties are not aware of any restitution owed in this matter.

Further, the Company understands that a mandatory special assessment fee of $400.00 shall

be imposed under the provisions of Title 18, United States Code Section 3013 for each count. This special assessment must be paid on the date of sentencing. Failure to pay this special assessment may result in the plea agreement being void.

Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, and the agreement made between the Government and the Company, the Government and the Company agree and stipulate to the following plea and sentence applicable to this case:

(1)     The Company shall plead guilty to the agreed one-count Bill of Information, charging the Company with one violation of Title 33, United States Code, Section 1908(a) for knowingly failing to maintain an oil record book while in port and within the internal waters of the United States. The facts constituting these violations shall be more thoroughly described in a mutually acceptable Joint Factual Statement submitted herewith;

(2)     In exchange for the Company's guilty plea, the Government agrees that it will not bring any other charges against the Company or its agents or employees arising from or related to any and all conduct that occurred in the Eastern District of Louisiana that was revealed by the investigation of the *M/V Tyana* and known to the Government at the time of signing of the plea agreement, including the activities described in paragraph (1) and more specifically set forth in the Joint Factual Statement. Nevertheless, this Plea Agreement is only binding on the United States's Attorney's Office for the Eastern District of Louisiana and does not bind any other federal, state, or local prosecuting authority. Nothing in this agreement shall be construed to release the defendant from possible related or consequential civil liability (including administrative sanctions) to any individual, legal entity, or the United States;

(3)     The Company further agrees to pay a total criminal monetary penalty of $500,000.00 dollars. The Company agrees that $150,000.00 of the aggregate $500,000.00 payment shall be paid as an organizational community service payment to an organization to be designated by the government prior to sentencing pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. § 3553(a). Because the community service payment is designated as community service by an organization, the Company agrees that it will not seek any reduction in its tax obligations as a result of these payments. In addition, since the payment constitutes community service, the Company will not characterize, publicize, or refer to the payment as a voluntary donation or contribution;

2

(4)     The Company agrees to pay the monetary penalty as follows:

    (a)     The community service payment of $150,000.00 shall be paid in full on the day of sentencing;

    (b)     The fine shall be paid in the following manner:

        (i) $350,000.00 due on the day of sentencing.

(5)     As set forth above, the Company must pay a special assessment of $400.00 on the day of sentencing. Failure to pay this special assessment may result in the plea agreement being void;

(6)     The Company will be placed on organizational probation for a period of three (3) years from the date of sentencing. The terms of probation shall be:

    (a)     The Company agrees that it shall commit no further violations of MARPOL 73/78, federal, state or local law, including those laws and regulations for which primary enforcement has been delegated to state authorities, and shall conduct all its operations in accordance with environmental laws of the United States.

    (b)     Payment in full of the monetary amounts set forth herein including all special assessments, fines and restitution, and community service, in accordance with the payment schedule set forth above in (4).

    (c)     The Company agrees to implement an approved Environmental Compliance Plan ("ECP"), during its term of probation.

(7)     The parties do not believe that restitution is applicable in this case.

    The parties have entered into this plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure with the understanding that the Court will accept or reject the agreement but may not modify its terms. If the District Court modifies any portion of the plea agreement, the Company has the right to withdraw the guilty plea.

    Except as otherwise provided in this paragraph, the Company hereby expressly waives its rights to appeal from its conviction and/or its sentence, including but not limited to any appeal rights conferred by Title 28, United States Code, Sections 1291, and by Title 18, United States Code, Section 3742. The Company further waives its right to contest its conviction and/or its sentence in

any collateral proceeding, including proceedings brought under Title 28, United States Code, Section 2241 and Title 28, United States Code, Section 2255, on any ground, except that the Company may bring a post-conviction claim if the Company establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself. Subject to the foregoing, the Company reserves the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum. The Company waives and gives up its right to challenge its sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 and 2241, Rule 60 of the Federal Rules of Civil Procedure, Rule 36 of the Federal Rules of Criminal Procedure, writs of *coram nobis* and *audita querela*, and any other collateral challenges to his sentence of any kind; and

The Company further waives any right to seek attorney's fees and/or other litigation expenses under the "Hyde Amendment", Title 18, United States Code, Section 3006A and the Company acknowledges that the Government's position in the instant prosecution was not vexatious, frivolous or in bad faith.

Further, the Company understands that any discussions with the Company's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. The Company understands that the sentencing guidelines are advisory and are not mandatory for sentencing purposes.

The stated $350,000.00 fine and the community service of $150,000.00 represent the total amount to be paid by the Company pursuant to the guilty plea and no other fine/restitution shall be applicable in this case. The Company agrees that the fine and community service will be non-dischargeable in any bankruptcy proceeding and that defendant will not seek or cause to be sought a discharge or a finding of dischargeability as to this obligation.

This Plea Agreement shall bind the defendant and any subsidiaries and affiliates. During the three year probationary period, the defendant shall provide immediate, written notice to the Government and the U.S. Probation Office of any of the following: (i) any corporate name change, (ii) any purchase or sale of vessels, (iii) any agreement to operate, manage, be designated as an ISM manager for, or man any vessel, (iv) any change in the name, call sign, flag, owner, IMO number, or other identifying information of any vessel owned, operated, managed, ISM-managed, or manned by the Company, and (v) any purchase, sale, reorganization, transfer of a plurality or controlling interest, or divestiture of the Company, or (vi) any other change impacting upon or affecting this Plea Agreement. No change in name, change in corporate or individual control, business reorganization, bankruptcy, change in ownership, merger, change in legal status, sale or purchase of assets, or similar action shall alter or diminish the Company's obligations under this Plea Agreement. The Company further agrees that it will not engage in any business reorganization, transfer of ownership, corporate dissolution, or other business practice in order to avoid the obligations set forth in this Plea

4

Agreement.

The Company understands that the statements set forth above and the Joint Factual Statement to be filed in the record represent defendant's entire agreement with the Government and that there are no other agreements, letters or notations that will affect this agreement.

Very truly yours,

EMILY K. GREENFIELD
Assistant United States Attorney


TYANA NAVIGATION LIMITED

Attorney in fact
ALEXANDROS A. PATTAKOS

By: _____               14/11/2012
Representative for defendant                    Date

By: _____               November 14, 2012
GEORGE M. CHALOS                               Date
Attorney for defendant

ATTACHMENT A
Environmental Management System/Compliance Plan

PURSUANT TO PLEA AGREEMENT

United States v. Tyana Navigation Limited

The following standards and requirements for an ENVIRONMENTAL COMPLIANCE PROGRAM (ECP) have been prepared pursuant to the Plea Agreement between Tyana Navigation Limited (hereinafter "Tyana Navigation") and the United States (hereinafter "Government") filed in the United States District Court for the Eastern District of Louisiana. Compliance with all of the standards and requirements of the ECP is an essential term of the Plea Agreement.

The ECP includes various provisions to ensure that the *M/V Tyana* (IMO #9418468) is operated in compliance with all maritime environmental requirements established under applicable international, flag state and port state law, including, but not limited to the International Convention for the Safety of Life at Sea (SOLAS), the International Safety Management (ISM) Code, the International Convention for Prevention of Pollution from Ships (MARPOL) and all applicable Federal and state statutes and regulations including, but not limited to, the Ports and Waterways Safety Act (PWSA), the Act to Prevent Pollution from Ships (APPS), the Clean Water Act (CWA), and the Oil Pollution Act (OPA), and with the requirements of this agreement itself. The auditing requirements of this ECP apply to Tyana Navigation Limited and the *M/V Tyana* (IMO # 9418468).

## A. APPLICABILITY/PURPOSE

(1) This ECP shall apply to Tyana Navigation, including all subsidiaries, affiliated business entities, and agents (owned wholly or partially by Tyana Navigation), involved in the operation of the *M/V Tyana* on the date of sentencing or at any time during the period of probation. It shall also include all persons working for Tyana Navigation, its subsidiaries, affiliated business entities, agents, and any other individuals or organizations who are involved in the operation, maintenance and repair of the *M/V Tyana*, as direct employees or independent contractors on the date of sentencing or at any time during the period of probation.

(2) The ECP is not intended to replace the ISM Code, or any other applicable international legal requirement or United States statute and regulation. The purpose of this ECP is to augment the requirements of existing law by increasing and improving inspections, reviews, and audits of Tyana Navigation and its operation and management of the *M/V Tyana*, and operations involving the *M/V Tyana*; increase training of all of Tyana Navigation personnel involved with said vessel; develop and implement management and engineering controls to better manage, detect and prevent environmental violations; and require periodic reports to the United States Probation Office for the Eastern District of Louisiana, the United States Attorney's Office for the Eastern District of Louisiana, and the United States Coast Guard (collectively hereinafter "the United States") to ensure that Tyana Navigation and those entities operating and/or manning the *M/V Tyana* are following the requirements of this ECP and that the *M/V Tyana* complies with all maritime environmental requirements established under applicable international, flag state, and port state law and all applicable Federal and state statutes and regulations, and that an effective environmental management system is in place to prevent recurrence of violations.

(3) In the event that Tyana Navigation contracts with a third party to operate or provide manning for the *M/V Tyana*, Tyana Navigation shall ensure that such third parties understand that Tyana Navigation has in place this ECP and that certain requirements will require cooperation and assistance from the third party operator or manning agent. Such requirements shall be explicitly stated in any third party contract for the operation or manning of any vessel covered under this ECP.

## B. CORPORATE COMPLIANCE MANAGER

(1) Within sixty (60) days of entry of the Plea Agreement, Tyana Navigation shall designate a Corporate Compliance Manager (hereinafter "CCM") who shall report directly to the President and/or Managing Director of Tyana Navigation. Tyana Navigation shall provide the name of the CCM to the United States. The CCM should be the



same individual as Tyana Navigation's "designated person" under the ISM Code unless reasons are provided to the United States justifying why the "designated person" should not also be the CCM. The CCM shall be responsible for coordinating with the Independent ECP Consultant (hereinafter "IC"), as more fully described below, developing and implementing all of the procedures and systems required herein, establishing and implementing training programs for the officers and crew of the *M/V Tyana*, ensuring that reviews, audits and surveys are carried out as required and ensuring that all documents are properly maintained and that reports are made on a timely basis to the IC and the United States. All reports required under this ECP shall be reviewed by the CCM and signed under the penalty of perjury.

(2)   Tyana Navigation shall ensure that a procedure and reporting system is established that requires and enables all officers, crewmembers and employees, and shoreside personnel involved in the manning and/or operation of the *M/V Tyana*, including all persons working for Tyana Navigation, its subsidiaries, affiliated business entities (owned wholly or partially by Tyana Navigation Limited) and agents of Tyana Navigation as either direct employees or independent contractors, including the operator of the *M/V Tyana*, to notify the CCM of all violations of any applicable environmental requirements or other requirements of this ECP and to cooperate fully with the IC and the United States in carrying out their reviewing, auditing and oversight functions required by applicable law and this ECP. Tyana Navigation agrees to ensure that a procedure is established that makes failure to notify the CCM of any violations of any applicable environmental requirements and failure to cooperate fully with the Classification Societies, the IC and the United States in carrying out their auditing and oversight functions required by applicable law and this ECP, grounds for dismissal. Tyana Navigation agrees not to retaliate against any officer, crewmember, employee, or shoreside personnel involved in the manning and/or operation of *M/V Tyana*, including all persons working for Tyana Navigation, its subsidiaries, affiliated business entities (owned wholly or partially by Tyana Navigation) and agents of Tyana Navigation as either direct employees or independent contractors or entity making any such report.

(3)   The CCM shall be authorized to access all records and personnel regarding the *M/V Tyana* for the purpose of ensuring compliance with the ECP. The CCM shall be authorized to implement all requirements of the ECP on the *M/V Tyana*. The CCM shall ensure that audits and surveys are carried out as required, that all documents are properly maintained and that reports are made on a timely basis to the U.S. Probation Office, IC, the designated representative of the Coast Guard, and Tyana Navigation. The CCM position will be filled by an individual(s) with significant maritime vessel operational background, who possesses auditing experience and is thoroughly familiar with the requirements of this ECP, and is knowledgeable about domestic and international maritime environmental laws and regulations.

**CCM Responsibilities:**

(a)   Ensure environmental compliance of the *M/V Tyana* (IMO # 9418468).

(b)   Development and Maintenance of Effective Training Programs

-To the extent not already completed, the CCM will be responsible for ensuring that those individuals, agents and operators associated with the *M/V Tyana* develop training programs to educate and train employees of Tyana Navigation's environmental commitment, the requirements of the ECP, the policies and procedures for complying with the ECP, and the possible consequences to Tyana Navigation and to individuals for failure to comply with environmental laws.

-Provide environmental consultants and contractors of Tyana Navigation with documents and training to make them aware of the ECP.

(c)   Auditing and Compliance Assessment

-Ensure that the IC conducts the review and audits required by the ECP and that the required reports are prepared.

(d)   ECP Reviews

-Supervise annual overall review of the environmental compliance program and "focused" review of key

2



environmental areas to promote the adoption of "best practices."

(e) Reporting of Non -Compliance by Employees and Crew Members

-Establish a means by which employees and/or crew members may report (anonymously if the employee so desires) issues of non-compliance with this ECP and any other procedure, policy, or regulation associated with environmental protection.

## C. MASTER AND CHIEF ENGINEER

(1) The Master of the *M/V Tyana* subject to this ECP, shall ensure that prompt reports are made to the CCM of any non-compliant condition of the vessel.

(2) The Chief Engineer on board the *M/V Tyana* subject to this ECP shall perform the following duties regarding this ECP:

-To daily measure, monitor and manage shipboard generated wastes;

-Report to the CCM and cooperate with Tyana Navigation and the operator of the *M/V Tyana* to resolve environmental concerns, such as inoperative or ineffective pollution prevention equipment and document all efforts to do so in a log that is available for review and audit at all times.

## D. INDEPENDENT ECP CONSULTANT AND ENVIRONMENTAL AUDITS

(1) No later than thirty (30) days following the District Court's final imposition of sentence in United States v. Tyana Navigation Limited, Tyana Navigation shall nominate three candidates for the IC that meet the qualifications below to conduct an Initial Environmental Review, and a Report of Findings for all of the *M/V Tyana* operations as defined below. The United States will notify Tyana Navigation in writing of which IC is acceptable. If none of the proposed candidates are acceptable, Tyana Navigation will supply an additional candidate.

(2) Qualified candidates for the IC position must have expertise and competence in the regulatory programs under U.S. and international environmental laws, and have expertise and competence in waste stream evaluation, monitoring and control technologies, with a primary emphasis on engine room and machinery space operations, used to achieve and maintain compliance in respect to the *M/V Tyana*. The IC shall also have sufficient expertise and competence to assess whether the operator of the *M/V Tyana* has an adequate Environmental Management System in place to assess regulatory and ECP compliance, to correct non-compliance, and to prevent future non-compliance. Tyana Navigation and the United States acknowledge that the functions of the IC may, by mutual agreement, be fulfilled by one or more individuals.

(3) The IC must not directly own any stock in Tyana Navigation any of its subsidiaries, affiliated business entities (owned wholly or partially by Tyana Navigation) or any agents of Tyana Navigation, and must have no other direct financial stake in the outcome of duties conducted Pursuant to this Plea Agreement. The IC must be capable of exercising the same independent judgment and discipline that a certified public accounting firm would be expected to exercise in auditing a publicly held corporation. If Tyana Navigation has any other contractual relationship with the IC, both Tyana Navigation and the IC shall disclose to the United States such past or existing contractual relationships.

(4) If the United States determines that the proposed IC does not reasonably meet the qualifications set forth in the previous paragraphs, or that past or existing relationships with the IC would affect the IC's ability to exercise the independent judgment and discipline required to conduct the ECP review and evaluation, such IC shall be disapproved and another IC shall be proposed by Tyana Navigation within thirty (30) days of Tyana Navigation's receipt of the United States' disapproval. The United States will not unreasonably withhold approval.

(5) During the first year of probation, the IC shall conduct an Initial Environmental Review of the operation of the *M/V Tyana* while the vessel is underway and operating on a voyage of short duration (4 days or less). Any underway inspection should be scheduled to accommodate, as much as practicable, the vessel's operations and schedule. The

3

Initial Environmental Review shall be performed to ascertain and evaluate various aspects of the *M/V Tyana*: its systems, equipment and components; current practices whether documented or not; and the knowledge, skills, and abilities of ship and shoreside personnel as they relate to the requirements of this ECP, and other maritime environmental protection requirements. The IC shall also conduct another audit of the vessel under the same circumstances as in the initial review, during the second year of probation.  The second audit may be conducted while the vessel is in port.

(6) The Initial Environmental Review may be considered as a discovery action in that its purpose is to review all areas of the operations that may impact various elements of pollution prevention and environmental protection. It will exceed a typical SMS audit in scope and will be used to determine practices, procedures and equipment conditions not typically documented during a routine inspection by the classification society, port or flag state. The results of the Initial Environmental Review will be used to shape and revise the Environmental Management System established by this ECP.

(7) The Initial Environmental Review shall meet the following specific requirements:

(a) It shall assess all waste streams developed from any system, equipment and components found in each machinery space on board the *M/V Tyana*. This will include observation and documentation describing the leakages apparent on each system that can contribute to bilge loading. The audit will determine the status and quantify leakages stemming from:

(i) all pump and valve seals and glands during operation,
(ii) all piping systems, flanges, gaskets, fittings and joints,
(iii) all equipment casings such as main and auxiliary engines, and reduction gears,
(iv) operation of engines, boilers, incinerators, and evaporators, and
(v) all other mechanical components found aboard the *M/V Tyana*.

(b) It shall assess the adequacy and performance of the Oily Water Separator (OWS) and Incinerator, Sewage System, and any other pollution prevention equipment to handle the quantities and types of wastes developed during normal operations. To assess the performance of the OWS, the auditor shall conduct an operational test using the normal tank or bilge well supply as would be used in normal operations.  The supply tank or bilge well must not be diluted.  It will include an evaluation of the capacities for all tanks or containers associated with the management of sludges, bilges and oily wastes or other Wastes. It will include an evaluation of documentation tracking, maintenance and repair, and modifications of all pollution prevention equipment, and notification of equipment failure to the ECM or other shoreside personnel.

(c) It shall assess the *M/V Tyana's* crew and their current workloads relating to all work performed on the vessel's systems, equipment and components, in an effort to ascertain that even the least significant leakages contributing to waste streams are remedied in a prompt and effective manner.

(d) It shall assess the adequacy of the policy, procedures, current practices and equipment, including storage capabilities used to manage shipboard solid wastes generated in all areas of the vessel and the effectiveness of garbage management plans.

(e) It shall assess the ability of the *M/V Tyana's* crewmembers to create, devise or implement an unauthorized process to dispose of a shipboard waste including regular garbage, machinery space and cargo-generated wastes.

(f) It shall assess the adequacy of the *M/V Tyana's* responsible crewmembers to maintain the following records and shall include a complete comparative analysis (against each other where possible) of the following records:

(i) Oil Record Book,
(ii) Engine room Alarms,
(iii) Tank sounding logs (if vessel not so equipped, then it must start maintaining such a log),

4

(iv)    Personal work records and lists,
(v)     Maintenance records,
(vi)    Vendor service records,
(vii)   Bilge waste and sludge receipts,
(viii)  Deck Log,
(ix)    Garbage Record Book,
(x)     Wastewater Discharge Log,
(xi)    Oil to Sea Equipment Interface Logs,
(xii)   Hazardous waste manifests,
(xiii)  Solid waste discharge receipts,
(xiv)   Content Monitor (OWS) calibration logs,
(xv)    Training records,
(xvi)   Vetting documents,
(xvii)  Inspection Documents, and
(xviii) SMS or SQE Audit documents

(g) It shall assess the adequacy of the policy, procedures, and current practices used to store and dispose of:

(i)     Solvents,
(ii)    Degreasers,
(iii)   Cleaning wastes,
(iv)    Batteries,
(v)     Paints,
(vi)    Oily rags,
(vii)   Fluorescent and incandescent bulbs,
(viii)  Expired boiler and engine chemicals,
(ix)    Used boiler and engine chemicals,
(x)     Galley greases,
(xi)    Pyrotechnics,
(xii)   Medical supplies,
(xiii)  Contaminates fuels,
(xiv)   Used Oil and greases,
(xv)    Incinerator ash,
(xvi)   Transformer oils,
(xvii)  Contaminated refrigerants, and
(xviii) Hazardous materials.

(h) It shall assess and evaluate documentation containing the certifications that each vessel's officers understand the requirements of this ECP and shall require signed statements by all vessel officers attesting that they understand false entries in the Oil Record Book for machinery space operations is a violation of law.

(i) It shall assess the policy, procedures, and current practices associated with the Master and Chief Engineer's capability to communicate with shoreside personnel, including the CCM and designated persons, and shall review such communications.

(j) It shall assess the frequency and adequacy of, through interviews of crewmembers, shipboard pollution prevention and environmental protection meetings and training,

(k) It shall assess the policy, procedures, and current practices used on vessels and ashore to track crewmember environmental training, as well as the availability of and access to training resources.

(l) It shall assess the adequacy of existing methods for employees to report environmental concerns and evaluate the

5

capability of a reporting individual to remain anonymous, and review processes of handling environmental complaints from crewmembers and shoreside personnel.

(m) It shall assess the policy, procedures, and current practices to ensure that vessel vendors, technicians, and other non-crewmembers follow requirements regarding pollution prevention and environmental protection.

(n) It shall assess the policy, procedures, and current practices used to manage the existing seal tracking and valve locking program, including the storage of seals and preventing the use of duplicate seals.

(o) It shall assess the policy, procedures, current practices, and equipment used to maintain refrigeration units, including availability and status of refrigerant recovery units, procedures for recovering refrigerants, and maintenance of a leak log.

(p) It shall assess the policy, procedures, current practices, and equipment related to Oil Transfer Procedures, including slops discharges, conditions of hoses, connections and transfer equipment, and shall include reviews of Declarations of Inspections.

(q) It shall assess the policy, procedures, current practices, and equipment used to handle emergency releases of hazardous fluids or pollutants on deck or within machinery spaces of vessels, including a review of the Shipboard Oil Pollution Emergency Plan and evaluation of personnel performing such duties.

(r) It shall assess the policy, procedures, and current practices associated with ballast water management and invasive species requirements.

(s) It shall include a survey of all fleet engineers at all levels for information on how to make the OWS, OCM, associated systems and waste management processes tamperproof and for methods on reducing or handling waste accumulations within machinery spaces. Participation shall be mandatory for all engineering personnel. The survey shall request the opinions of the vessel's engineers into their ability to adequately maintain the vessel systems, equipment and components. The survey will emphasize non-retaliation for open and honest opinions and reports of current noncompliant circumstances. The responses will be maintained in original format and made available to the IC. The original survey responses shall be included in the Report of Findings.

(8) At the conclusion of the Initial Environmental Review, but in no event later than twelve (12) months following the appointment date of the IC, the IC shall prepare a Report of Findings. If the IC believes that additional time is needed to analyze available information, or to gather additional information, or to complete the Report of Findings, Tyana Navigation may request that the Government grant the IC such additional time, as required, which request shall not be unreasonably denied. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Report of Findings. The Report of Findings shall be provided to Tyana Navigation and the United States. Based on the Report of Findings, Tyana Navigation shall ensure an Environmental Management System and Manual is developed for the *M/V Tyana* as described below. The IC shall conduct a second audit using the above criteria during the second year of probation in order to ascertain if the EMS system is implemented and whether the *M/V Tyana* is in compliance with environmental requirements.

## E. ENVIRONMENTAL MANAGEMENT SYSTEM

(1) The CCM shall be responsible for establishing an Environmental Management System (EMS) applicable to the *M/V Tyana*. To the extent possible, the EMS shall be based upon the ISO 14001 / 2004 standards. The EMS shall include the following core requirements:

(2) Environmental Policy:

The EMS should be based upon a documented and clearly communicated policy. This policy should set out Tyana

Navigation's commitment towards a cleaner marine environment. It should include:

(i)     provision for compliance with environmental requirements;

(ii)    commitment to continuous improvement in environmental performance, including those areas required by this ECP;

(iii)   commitment to pollution prevention that emphasizes source reduction, to include funding and human resources necessary to effectively maintain and repair the systems, equipment and components found in machinery spaces of vessels;

(iv)   commitment to continuous reduction of environmental risks; and

(v)    commitment to sharing information with external stakeholders on environmental performance.

(3) Communication of Environmental Requirements:

The EMS must provide a means to identify, explain, and communicate all environmental requirements, and any additional best practices or industry norms which Tyana Navigation may choose to adopt, to Tyana Navigation employees, and other vendors, technicians or non-crewmembers engaged in the waste-stream management of the M/V Tyana. The EMS must also specify procedures for incorporating changes in operations or environmental requirements into the communication plan.

(4) Objectives and Targets:

(a) The EMS shall establish specific objectives and targets for:

(i)     achieving and maintaining compliance with all marine environmental protection requirements and the requirements of this ECP;

(ii)    environmental performance demonstrating continuous improvement in regulated and non-regulated areas;

(iii)   pollution prevention that emphasizes source reduction with respect to machinery space waste streams and effective management of cargo related wastes; and

(iv)   sharing information with external stakeholders on environmental performance against all EMS objectives and targets.

(b) The EMS shall establish appropriate time frames to meet these objectives and targets. These must be documented and updated as environmental requirements change or as modifications occur in activities and structures within organizations in a manner that affects environmental performance or as a result of recommendations made by the IC or other Auditor.

(5) Structure, Responsibility and Resources:

Tyana Navigation will ensure that it is equipped with sufficient personnel and other resources to meet its objectives and targets. The EMS will describe in detail the procedures and steps for achieving those objectives and targets. The EMS will define the compliance roles and responsibilities of all vessel and shoreside personnel involved with the operation maintenance and repair of the M/V Tyana, and will indicate how they and other corporate personnel will be held accountable for achieving and maintaining compliance with this EMS, and other requirements of that EMS, and other marine environmental protection requirements. The EMS will also establish procedures for receiving and addressing concerns raised by Tyana Navigation authorized persons and others regarding environmental performance and compliance.

(6) Operational Control:

The EMS will identify and provide for the planning and management of all of Tyana Navigation's operations and activities with a view to achieving the ECP objectives and targets. For example, vessel deck department and engine room machinery space maintenance and repair will be an important aspect in achieving and maintaining compliance and enhancing environmental performance.

(7) Corrective and Preventive Action and Emergency Procedures:

7

(a) Tyana Navigation, through its EMS, will establish and maintain documented procedures for preventing, detecting, investigating, promptly initiating corrective action, and reporting (both internally and externally) any occurrence that may affect the organizations ability to achieve the ECP objectives and targets.

(b) Such measures must address incidents that may have an effect on compliance with environmental requirements as well as on environmental performance in regulated and non-regulated areas, including requirements of this ECP, or other marine environmental protection requirements. Examples of such situations include incinerator or oily water separator malfunctions, overflows of fuel or slop tanks, overflow of tanks within machinery spaces, fuel oil, lube oil, saltwater line failures, operator errors and other accidental releases.

(c) The EMS must also establish documented procedures for mitigating any adverse impacts on the environment that may be associated with accidents or emergency situations. If the environmental violation or incident resulted from a weakness in the system, the EMS should be updated and refined to minimize the likelihood of such problems recurring in the future. The EMS should also, to the extent possible, provide for the testing and evaluation of emergency procedures.

(8) Training, Awareness and Competence:

The EMS must establish procedures to ensure that all personnel (including vendors, technicians, and other non-crewmembers) whose job responsibilities affect the ability to achieve the ECP objectives and targets, have been trained and are capable of carrying out these responsibilities. In particular, the training should highlight means to enhance the ability of such personnel to ensure compliance with environmental requirements and voluntary undertakings, the requirements of the ECP, and other marine environmental protection requirements.

(9) Organizational Decision-making and Planning:

The EMS must describe how these elements will be integrated into the Tyana Navigation overall decision-making and planning, in particular, decisions on capital improvements, training programs, and vessel operations, maintenance, and repair activities.

(10) Document Control:

The EMS must establish procedures to ensure maintenance of appropriate documentation relating to its objectives and targets and should also ensure that those records will be adequate for subsequent evaluation and improvement of the operation of the EMS. Additionally, all records will be maintained and made available to the IC, auditors and port and flag state personnel.

(11) Continuous Evaluation and Improvement:

(a) The EMS must include methods to perform periodic, documented and objective internal auditing of the organization's performance in achieving these objectives and targets, and on how well the ECP assists the organization in achieving those objectives and targets. This requirement is independent from the auditing requirements detailed elsewhere in this plan. The goal of these internal audits and reviews will be to allow management to continuously monitor and assess vessel systems, equipment and components, and the ability and proficiency at which vessel crew members and personnel ashore comply to the policies and procedures established by this ECP.

(b) The EMS will identify an ongoing process for assessing when the *M/V Tyana* is to be taken out of service for an environmental discharge related repair, such as when a discharge is caused by leaking stern tubes, thrusters or other equipment.

(c) The EMS will include organization charts, as appropriate, that identify shoreside and vessel individuals having environmental performance, risk reduction, and regulatory compliance responsibilities. The charts shall also specify responsibilities of Port Captains, Port Engineers, and Engineering Superintendents to report information related to environmental releases or inadequate performance of environmental pollution protection equipment, casualties causing internal spills, excessive waste development and leaking equipment with oil-to-sea interfaces.

8

(d) The EMS will promote non-retaliatory practices and ensure that employees are not punished or otherwise suffer negative consequences for reporting violations of environmental laws, regulations, or policies and will require all crew members to refuse any illegal orders.

(e) The EMS will describe potential consequences for departure from specified operating policies and procedures, including possible termination of employment, as well as criminal/civil/administrative penalties as a result of noncompliance.

(f) The EMS will make employee compliance with environmental policies of the ECP, and other marine environmental protection requirements mandatory.

(g) The EMS will include policies against any incentive or bonus programs based on minimizing operational costs associated with the operation, maintenance and repair of machinery space systems, equipment and components to ensure that employees do not avoid such costs and thereby sacrifice environmental compliance.

(h) The EMS will describe a confidential non-compliance reporting system that is adopted to ensure that employees may quickly and confidentially report discharges, spills, environmental incidents and other environmental performance data.

(i) The EMS will identify all operations and activities where documented standard operating practices (SOPs) are needed to prevent potential violations or unplanned waste stream releases, with a primary emphasis on vessel engine room operations, systems, equipment and components and cargo residue management.

(j) The EMS will identify the types of records developed and maintained in support of the ECP such as reports, audit working papers, correspondence, communications, reports from the confidential system for non-compliance reporting, and identify personnel responsible for their maintenance, and procedures for responding to inquiries and requests for release of information. The EMS shall provide a system for conducting and documenting routine, objective self-inspections by Tyana Navigation internal auditors, supervisors, and trained staff to check for malfunctions, deterioration, and inadequate maintenance of pollution prevention equipment, worker adherence to SOPs, unusual situations, and unauthorized releases.

## F. COURT APPOINTED MONITOR

As part of the ECP, Tyana Navigation agrees to pay for a Court Appointed Monitor (hereinafter "Monitor") that will report to the Court and the United States during the entire period of probation. The Monitor can, at Tyana Navigation's option, serve concurrently in the additional capacity of Third Party Auditor (hereinafter "TPA") under the terms of this Agreement. Within thirty (30) days of the entry of the imposition of sentence Tyana Navigation will submit a list of three qualified candidates for the Monitor from which the United States will select one of the candidates. In the event that the United States does not find one of the candidates satisfactory, or if the United States does not find the work of the Monitor satisfactory, at any time they may request Tyana Navigation to supply additional candidates. Further, if an agreement cannot be reached regarding the selection, the decision shall be left up to the Court. The Monitor must have staff with the following experience:

(a) Expertise and competence in the regulatory programs under United States and international marine safety and environmental laws; expertise and competence to assess whether Tyana Navigation and its operator has adequate management systems in place to ensure regulatory compliance, correct non-compliance, and prevent future non-compliance; and demonstrated capability to evaluate Tyana Navigation's required effort and commitment in satisfying the requirements of this ECP and the EMS. Tyana Navigation shall ensure that the Monitor is provided all reports and notifications as established in this plan.

(b) The Monitor shall be assigned the following tasks and responsibilities and provide written submissions to the Court as set forth below:

9

-Review the relationship between Tyana Navigation and the IC and TPA and evaluate the adequacy of measures taken to ensure that the IC and TPA act with independence.

-Conduct a review and submit an annual report to the U.S. Probation Office, Tyana Navigation, and a designated representative of the Coast Guard, regarding each of the audits conducted by the IC and TPA pursuant to the Plea Agreement and the ECP. The Monitor's reports shall provide a summary of the findings regarding the adequacy of any audits required by this ECP and adequacy of recommendations for change, as found necessary.

-The annual report shall also include and address any other information that the Monitor is aware of which pertains to Tyana Navigation's capabilities to meet the objectives of this ECP or any other marine environmental protection requirements.

-All known inadequacies of the IC, the TPA or with respect to Tyana Navigation's performance whether personnel based or related to the *M/V Tyana* systems, equipment, or components shall be reported in the annual report.

-If the Monitor receives information regarding a direct violation of any existing marine environmental protection requirement or requirement of this ECP, the Monitor must immediately report the occurrence to the U.S. Probation Office and to the United States. At any time during the probationary period the Monitor may inspect or investigate any aspect of the IC or TPA activities as they relate to the requirements of this plan or with respect to operations of the *M/V Tyana*, and shall be provided full access to all records, audit personnel, vessel and shore side facilities as is necessary to perform its duties.

-Provide any additional reports, in both electronic and hard copy form, to the U.S. Probation Office, Tyana Navigation, and a designated representative of the Coast Guard as requested by the Court or as appropriate and to include inadequacies in the audit process, violations of the terms and conditions of the ECP and EMS and any other findings of significant problems or deficiencies.

## G. ENVIRONMENTAL MANAGEMENT SYSTEM MANUAL

(1) Within six (6) months of receiving the Report of Findings on the Initial Environmental Review from the IC, Tyana Navigation shall ensure that an EMS Manual applicable to the *M/V Tyana* is prepared, which shall describe and document the EMS and contain any additional EMS implementation schedules as needed to ensure complete compliance in all operations and procedures. If Tyana Navigation believes that additional time is needed to analyze available information or to gather additional information to prepare the EMS Manual, Tyana Navigation may request that the Government grant it such additional time as needed to prepare and submit the EMS Manual, which request shall not be unreasonably denied. If necessary, the United States may grant additional time in thirty (30) day increments for completion of the EMS Manual.

(2) Tyana Navigation shall submit a proposed final EMS Manual to the CCM, the IC and the United States immediately upon its completion. The IC and the United States shall provide comments on the proposed EMS Manual within ninety (90) days of receipt unless additional time for review is requested in writing. Tyana Navigation shall submit a supplement to the EMS or a written response, as appropriate, within sixty (60) days of receipt of the comments. The EMS is subject to final approval from the United States, which approval shall not be unreasonably withheld.

(3) All elements of the EMS Manual shall be fully implemented no later than nine (9) months following final approval by the United States. Upon receipt of final approval, Tyana Navigation shall ensure immediate implementation of the EMS in accordance with the schedule contained in the EMS Manual. Tyana Navigation shall submit reports to the designated representative of the Coast Guard, and the Environmental Crimes Section, United States Department of Justice beginning no later than one hundred twenty (120) days following the publication of the Report of Findings by the IC, regarding the status of the development and implementation of the EMS and the results of the Review and evaluation of Ilios operations or audits conducted pursuant to the EMS. These reports shall be made on an annual basis.

10

AT

## H. FINAL EMS/ECP COMPLIANCE AUDIT

(1) Beginning no later than twelve (12) months prior to the end of probation, Tyana Navigation shall arrange for, fund and complete a Final EMS/ECP Compliance Audit for the *M/V Tyana* while the vessel is underway and operating on a voyage of short duration (4 days or less) during the final year of probation. Any underway inspection should be scheduled to accommodate, as much as practicable, the vessel's operations and schedule. The audit is to be conducted by the TPA, to verify compliance with applicable environmental laws and regulations and the requirements of this EMS and ECP. The TPA will have full access to all facilities, records, employees and officers associated with the *M/V Tyana* at all times. During this final audit phase Tyana Navigation shall immediately advise the TPA of any issue that comes to its attention that adversely impacts compliance with all applicable laws and regulations and the EMS/ECP.

(2) The TPA will be certified by the American National Standards Institute -Registration Accreditation Board or will have compatible credentials and experience in performing EMS/ECP audits. Selection of the TPA is subject to the same conditions identified in Section C above regarding selection of the IC. Selection of the TPA will be approved by the United States. The United States will notify Tyana Navigation in writing of its approval or disapproval as expeditiously as possible.

(3) The Final EMS/ECP Compliance Audits shall be conducted, as much as is practicable under the circumstances, in accordance with the principles set forth in ISO 9000 and ISO 14011, using ISO 14012 as supplemental guidance. The TPA shall assess conformance with the elements covered in the Initial Environmental Review, with all additional requirements presented in the EMS and with the additional requirements of this plan. Designated United States representatives may participate in the audits as observers at Government expense. Tyana Navigation shall make timely notification to the United States regarding audit scheduling in order to make arrangements for observers to be present.

(4) The TPA shall deliver the *M/V Tyana* audit report to the appropriate company official upon completion. In addition, the TPA will deliver an Audit Report to the U.S. Probation Office, and a designated representative of the Coast Guard within thirty (30) days after the completion of the final audit. If the TPA believes that additional time is needed to analyze available information or to gather additional information, Tyana Navigation may request that the Government grant the TPA such additional time as needed to prepare and submit the Audit Report. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Audit Report.

(5) The Final EMS/ECP Compliance Audit Report shall present the Audit Findings and shall, at a minimum, contain the following information:

    (a) Audit scope, including the time period covered by the audit;

    (b) The date(s) the audit was conducted;

    (c) Identification of the audit team members;

    (d) Identification of the company representatives and regulatory personnel observing the audit (if any);

    (e) The distribution list for the Final EMS/ECP Compliance Audit Report;

    (f) A summary of the audit process, including any obstacles encountered;

    (g) Detailed Audit Findings, including the basis for each finding and any Area of Concern identified;

    (h) Identification of any Audit Findings corrected or Areas of Concern addressed during the audit, and a description of the corrective measures and when they were implemented;

    (i) Certification by the TPA that the Final EMS/ECP Compliance Audit was conducted in accordance with this document and general audit principles.

(6) Within sixty (60) days from completion of the Final EMS/ECP Compliance Audit, Tyana Navigation shall develop

and submit to the United States, for review and comment, an Action Plan for expeditiously bringing the *M/V Tyana* and/or its operator into full conformance with all applicable laws and regulations and the EMS/ECP Manual to the extent not already done. The Action Plan may include the result of any root cause analysis, specific deliverables, responsibility assignments, and an implementation schedule. Tyana Navigation may request that the United States permit a brief extension of the time limit stated above on a case by case basis. Such permission shall not be unreasonably withheld.

(7) The Action Plan shall be reviewed by the United States which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, Tyana Navigation shall implement the Action Plan in accordance with the schedules set forth therein. Within thirty (30) days after all items in the Action Plan have been completed, Tyana Navigation shall submit a written Action Plan Completion Certification to the United States.

## I. NON-COMPLIANCE

(1) This EMS/ECP does not in any way release Tyana Navigation from complying with any applicable international conventions and treaties, State or Federal statutes and/or regulations, the ISM Code, or other international maritime conventions or treaties and does not limit imposition of any sanctions, penalties, or any other actions, available under those international conventions and treaties, State or Federal statutes and regulations, the ISM Code, or other international maritime safety conventions or treaties.

(2) The EMS/ECP shall be part of the Plea Agreement and adherence to it will be a condition of probation. Failure to comply with any part of this EMS/ECP (including but not limited to refusal to pay valid charges for the IC or TPA and failure to provide the IC or TPA access to vessels, facilities, personnel or documents) may be a violation of the Plea Agreement and may be grounds for the revocation or modification of Tyana Navigation's probation. Should the United States or the U.S. Probation Office seek to revoke or modify Tyana Navigation's probation based on its refusal to pay valid charges for the IC or TPA and/or its failure to provide the IC or TPA access to vessels, facilities, personnel, or documents, and/or as the result of any disagreement regarding any of the provisions of this EMS/ECP, Tyana Navigation shall have the right to contest the reasonableness of such revocation before the appropriate U.S. District Court.

## J. BOARD OF DIRECTORS

Tyana Navigation shall ensure that at least yearly its Board of Directors or equivalent governing structure receive and review reports from the CCM and any applicable report from the IC concerning the implementation of this EMS/ECP, including environmental compliance, EMS implementation, and manager, officer, and crew training. Copies of those portions of the meeting agendas and internal company reports concerning these items shall be included in the reports to the United States.

## K. TRAINING REQUIREMENTS

(1) The CCM will be responsible for developing training programs to educate and train Tyana Navigation vessel and shoreside employees associated with the operation and management of its vessels. The CCM may name a Corporate Training Officer to ensure that the requirements of this section are met.

(2) Training shall occur annually for all employees and be performed by qualified instructors at a training facility before an employee assumes his or her duties. The training shall consist of pertinent sections of this ECP, the EMS, and existing marine environmental protection requirements. The training shall include shipboard-related technical and practical information associated with pollution prevention and the operation, maintenance and repair of pollution prevention equipment and systems, and be appropriate for the work responsibilities and department in which an employee works. The training must include discussion of the consequences to Tyana Navigation and its employees for failure to comply with the requirements of this ECP, EMS, and existing marine environmental protection requirements.

(3) Where possible, a basic initial training program shall be provided to vessel employees currently onboard the *M/V*

12

*Tyana* in an effort to promptly mitigate pollution risk and ensure environmental protection.

(4) Additionally, the training shall include instruction regarding:

  (a) Corporate environmental compliance structure, including the CCM and contact information.

  (b) Comprehensive overview of this ECP, the EMS, and other marine environmental protection requirements.

  (c) The reporting system used to report non-compliance.

  (d) Sanctions and consequences for violations such as remedial training, suspension, termination, and civil and criminal liability.

  (e) Pollution prevention and minimization programs specifically relating to steward, deck, and engine department procedures and operations.

  (f) All requirements set forth in the Engineering section of this ECP.

  (g) Position specific training in the operation, maintenance and repair of oily water separators, incinerators, oil content discharge monitoring equipment, and other pollution prevention equipment.

  (h) Procedures for solid and hazardous waste segregation and storage, disposal, and reporting of releases.

  (i) All other shipboard environmental protection related procedures examined and described in the required initial review.

(5) All new crewmembers hired to work on the *M/V Tyana* shall receive training within seven (7) days of beginning to work on board the vessel. The *M/V Tyana* shall maintain documentation onboard verifying that all officers and crewmembers working on the vessel have received the required training. Such documentation shall be made available to the IC and the United States upon request.

(6) The Chief Engineer onboard the *M/V Tyana* shall prepare independent written verification that all engineroom crewmembers have received the training required by this EMS/ECP. All engineroom crewmembers shall sign and date a statement acknowledging completion of the training. This written verification, together with the signed acknowledgment, shall be completed semi-annually and maintained in the engine control room of each vessel.

## L. ENGINEERING REQUIREMENTS

(1) Unless otherwise stated, all of the requirements set forth below, if not in contravention of any Classification Society, Treaty or other Flag State requirement, shall be implemented on the *M/V Tyana* as soon as practicable, as determined by the CCM and not later than one year from the date of the signing of the plea agreement.

(2) Bilge Main Cross -Connections:

  (a) The operator and crew and all those associated with *the M/V Tyana* shall be notified regarding the prohibition against non-emergency use of cross connections from engine room bilge mains to the suction piping of larger pumps which may be referred to as the "fire and general service pump" or "fire, bilge and ballast" pump. The message shall state that the usage of these crossovers is similar to bypassing the OWS equipment and strictly prohibited.

  (b) The deck plates above or near the locations of these cross connections and the valves' bodies and associated hand wheels shall be painted international orange. A brightly colored sign with three inch letters shall be permanently fixed nearby reading, "Bilge System Piping Crossover-Emergency Use Only."



(c) To prevent unauthorized usage, Chief Engineers shall place numbered seals on these valves.

(d) The seal numbers shall be tracked in a seal number logbook and explanations shall be given any time a crossover to the bilge main is opened. Seals shall be used in other areas of the machinery space. The Master of the vessel shall retain the replacement seals in the vessel's safe. The Master will keep an additional log documenting when seals are replaced and their respective numbers. The CCM will be responsible for ensuring that no duplication of seal numbers occur.

(e) If the valves are remotely operated from the engine control room, the control must also be disabled and notice made near the associated push buttons or switches. They shall also be sealed.

(f) All other bilge suction valves not connected to the bilge main, including independent emergency suctions to the vessel's engine room bilges like those that may be connected to sea water circulating pumps, will be painted brightly and labeled similarly "Emergency Bilge Suction -Emergency Use Only," Their valve wheels will also have a numbered and logged seal capable of breakaway during emergency.  Seal numbers shall be kept in the Chief Engineer's official seal log book and explanations given for breakage or replacement.

(3) Blank Flanges:

(a) To prevent unauthorized connections within the engineroom and machinery spaces of the M/V Tyana, every blank flange associated with any piping leading overboard, on systems such as salt water service, main engine raw water cooling or other systems, shall be permanently secured, removed or fitted with numbered seals through the flange bolts to prevent unauthorized connections and discharges. The seals used shall be numbered and records kept in the previously mentioned log.

(b) The blank flange securing the bilge and sludge transfer system and the shore connection discharge valve at the discharge stations shall also require a numbered seal that will be maintained. Seal numbers shall be kept in the Chief Engineer's official seal log book.

(4) Tank Sounding Log:

The CCM shall ensure the immediate usage of Tank Sounding Log Books on the M/V Tyana. Engine room crewmembers shall be required to sound all waste, sludge, and bilge tanks associated with bilge water, oil wastes, or sludge daily for those having an unmanned engineroom. The Tank Sounding Log shall be initialed by the crewmember that obtained the reading. The Tank Soundings Log shall be maintained in the engine control room and made available during all inspections and audits required by this agreement.

(5) Oil-to-Sea Interfaces:

(a) A log book relating to equipment having oil-to-sea interfaces will be developed. Such systems may be oil lubricated stern tubes, bow or stern thrusters, stabilizers, hydraulically-operated controllable pitch propellers, and similar equipment whereby the leakage of a sealing component may cause a loss of operating medium into the surrounding waters of the vessel. Any replenishment of oil into the head tanks, operating systems reservoirs or other receivers associated with this equipment shall be logged regardless of quantity. Ingress of water into these systems must also be logged.

(b) When known, an explanation of the loss shall be provided, along with dates and time and signature. Routine stern tube lube oil loss must be logged and reported to the CCM immediately on each occasion. It is agreed that any Chief Engineer who fails to report these conditions will be removed from service.

(6) Record Keeping:

14

All Soundings and Logs required by this section shall be maintained onboard the vessel for a period of three years from the date of the final entry.

## M. DOCUMENTATION AVAILABLE FOR INSPECTION

The CCM shall ensure that all documentation required by this EMS/ECP is maintained and available for inspection by the IC, TPA, and the United States. The Master of the *M/V Tyana* under this ECP, shall maintain on board the vessel, all records required by International conventions and treaties including SOLAS, the ISM Code, and MARPOL and applicable State and Federal statutes and regulations and any additional documents required under this EMS/ECP, such as crew training records, and will make these records available to the IC, TPA, and the United States Coast Guard upon request. A summary of this information and any explanation, where appropriate, shall be included in the reports to be submitted to the United States by the IC and TPA.

## N. CHANGES IN OWNERSHIP/MANAGEMENT

Tyana Navigation agrees that it will notify the United States of any change in name, flag of registry, recognized organization, ownership or class society of the *M/V Tyana*, to include the operation, management, manning or control within 21 days of any change. Tyana Navigation agrees that this EMS/ECP shall remain in effect for the *M/V Tyana* regardless of changes in the vessel's flag of registry, recognized organizations, name, or class society.

## O. SELF-ENFORCEMENT

Tyana Navigation further agrees that it will undertake and implement the necessary procedures to ensure that this EMS/ECP is diligently complied with by the officers and crew of the *M/V Tyana*, as well as by all shore side employees, managers and other employees for the *M/V Tyana's* operation, on the date of sentencing or at any time during the period of probation.

## P. REVISIONS/MODIFICATIONS

The requirements of this EMS/ECP, including the dates and time periods mentioned herein, shall be strictly complied with. Should Tyana Navigation be unable to comply with any of the deadlines, it shall immediately notify the United States in writing of the reason(s) for non-compliance, and propose a revised timetable. The United States shall then determine as to whether the revised timetable should be accepted. Acceptance will not be unreasonably withheld.

## Q. REPORTS

All reports, documents and correspondence required under this EMS/ECP to be sent to the United States shall be sent to the following offices:



a) U.S. Attorney's Office
Eastern District of Louisiana
Attn: Emily K. Greenfield
650 Poydras St., Ste 1600
New Orleans, LA 70130
emily.greenfield@usdoj.gov

b) U.S. Coast Guard Commandant (CG-543)
Office of Vessel Activities
Attn: Designated Representative of the Coast Guard
2100 Second Street, SW
Washington, D.C. 20593-0001

c) U.S. Probation Department
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street
New Orleans, LA 70130

Defendant has read this ECP carefully and understands it thoroughly. Defendant enters into this ECP knowingly and voluntarily, and therefore agrees to abide by its terms. By its signatures below, the corporate representative agrees that he/she is duly authorized by the corporation's Board of Directors or equivalent governing structure pursuant to the same notarized legal document filed in United States v. Tyana Navigation Limited certifying that Defendant company is authorized to enter into and comply with all of the provisions of this Plea Agreement.

DATED: 15/11/2012.    Tyana Navigation Limited

By:    ALEXANDROS A. PATTAKOS
Attorney in fact.

As counsel for Defendant, we represent that we have discussed with our corporate client and its duly authorized representative(s) the terms of this EMS/ECP and have fully explained its requirements. We have no reason to doubt that our client is knowingly and voluntarily entering into this EMS/ECP.

DATED:                                    November 15, 2012
GEORGE M. CHALOS
Counsel for Tyana Navigation Limited

On behalf of the United States, the following agree to the terms of the EMS/ECP:

DATED:                                    12/5/12
EMILY K. GREENFIELD
Assistant United States Attorney

16